IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ERENE BRIESE, Individually; JDB and JRB, Individually; Erene Briese as Personal Representative on behalf of the heirs of David L. Briese, Jr., | |
| | CV-09-146-BLG-RFC-CSO |
| Plaintiffs, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE ADDRESSING PENDING MOTIONS |
| STATE OF MONTANA, DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, CHILD AND FAMILY SERVICES DIVISION; SOCIAL WORKER PAM WEISCHEDEL, UNKNOWN JOHN DOES AND JANE DOES 1-20 Employees and Supervisors, Individually and Personally, YELLOWSTONE COUNTY, A Political Subdivision of the State of Montana, YELLOWSTONE COUNTY SHERIFF'S DEPARTMENT; YELLOWSTONE COUNTY SHERIFF; UNKNOWN JOHN DOES AND JANE DOES 1-20, Employees and Supervisors, Individually and in their official capacities; CITY OF BILLINGS, BILLINGS POLICE DEPARTMENT, Employees and Supervisors, Individually and in their official capacities; JOANNE BRIESE; J. GREGORY TOMICICH; DAWN MACEY, and KENDALL JACKSON, | |
| Defendants. | |

Plaintiffs Erene Briese, JDB, and JRB (collectively "Briese Plaintiffs") initiated this action claiming violations of various federal and state laws by State, County, City, and private Defendants. See generally Pltfs' First Am. Cmplt (Court Doc. 51).

The following motions are pending:

1.    State Defendants' Motion to Dismiss First Amended Complaint (Court Doc. 54);

2.    Defendant Kendall Jackson's Alternative Motions (1) To Dismiss the Complaint [under] Rule 12(b)(6) [or] (2) For Judgment on the Pleadings [under] Rule 12(c) (Court Doc. 59);

3.    City of Billings' Motion to Strike Plaintiffs' Amended Complaint (Court Doc. 61); and

4.    Defendant Kendall L. Jackson's Motion to Dismiss (Court Doc. 76).

Having reviewed the record, together with the parties' arguments in support of their positions, the Court makes the findings and recommendations discussed below.

I.    **BRIESE PLAINTIFFS' ALLEGATIONS**

The Briese Plaintiffs' allegations are factually complex and multi-faceted. In their admittedly "voluminous" 89-page First Amended Complaint, they name "numerous defendants" and allege facts "that

2

have occurred over a period of years." Pltfs' Resp. to City of Billings'

Mtn to Strike (Court Doc. 67) at 3. The Court has carefully reviewed the

Briese Plaintiffs' entire First Amended Complaint. The Court will

discuss below the Briese Plaintiffs' factual allegations where pertinent

to the pending motions.

## II.   **DISCUSSION**

### A.   State Defendants' Motion to Dismiss

Defendants State of Montana ("State"), Department of Public

Health and Human Services, Child and Family Services Division

("DPHHS-CFSD"), and Pam Weischedel ("Weischedel"), a social worker,

(collectively "State Defendants") have moved to dismiss the Briese

Plaintiffs' action against them under Rules 12(b)(1) and (6).[1]

### 1.   **The Briese Plaintiffs' Claims Against State Defendants**

The Briese Plaintiffs' assert the following eight Counts against at

least one of the State Defendants, as indicated:

1. Count IV:      negligent infliction of emotional distress claim against
                  State, DPHHS-CFSD, and Weischedel (Court Doc. 51 at

---

[1]References to rules herein are to the Federal Rules of Civil Procedure
unless otherwise indicated.

73);

2.  Count V:      intentional infliction of emotional distress claim against State, DPHHS-CFSD, and Weischedel (Court Doc. 51 at 74);

3.  Count VIII:   tortious interference with parental relationship claim against Weischedel (Court Doc. 51 at 76);

4.  Count IX:     violation of right to privacy – false light claim against State and DPHHS-CFSD (Court Doc. 51 at 76);

5.  Count X:      § 1983 claim – conspiracy claim against State, DPHHS-CFSD, and Weischedel (Court Doc. 51 at 77);

6.  Count XIV:    § 1983 claim – violation of civil rights claim against Weischedel (Court Doc. 51 at 83);

7.  Count XV:     unlawful discrimination under the Americans with Disabilities Act ("ADA") claim against State and DPHHS-CFSD (Court Doc. 51 at 84); and

8.  Count XVI:    violation of § 504 of the Rehabilitation Act of 1973 ("RA") claim  against DPHHS-CFSD (Court Doc. 51 at 86).

The instant motion seeks dismissal of all eight Counts, to the extent they are asserted against the State Defendants, under various theories.

## 2.   **The Parties' Arguments**

The State Defendants advance five arguments in support of their

4

motion to dismiss the Briese Plaintiffs' claims against them.  First, with respect to Count X, they argue that the State and DPHHS-CFSD may not be sued under § 1983.  They argue that the State and its agencies are not "persons" subject to liability under § 1983.  State Defts' Br. (Court Doc. 55) at 4-5.

Second, with respect to Counts IV, V, and IX – that is, the Briese Plaintiffs' claims for damages under state law – the State and DPHHS-CFSD argue that the Eleventh Amendment to the U.S. Constitution cloaks them with immunity.  These Counts, they argue, are state law tort claims barred by Eleventh Amendment immunity, which the State has not unequivocally waived.  Id. at 5-8.

The State Defendants also argue that applicable Montana law renders Weischedel immune with respect to Counts IV, V, and VIII. They argue that Weischedel's actions giving rise to the Briese Plaintiffs' claims arose out of the course and scope of her employment as a state employee.  They argue that she is immune from individual liability provided the governmental entity employer acknowledges, as it does here, that Weischedel was acting within the course and scope of her

employment.  Id. at 8-11.  Also, the State Defendants argue that because Weischedel is immune and the State is the proper Defendant, the Briese Plaintiffs' state law tort claims are subject to dismissal because the State enjoys Eleventh Amendment immunity.  Id. at 11-12.

Third, the State Defendants argue that all claims against Weischedel are barred by the applicable statute of limitations.  They contend that the limitations period for the state law and § 1983 claims is three years.  They note that the Briese Plaintiffs' allegations against Weischedel arise from events occurring between November 3, 2006, and November 17, 2006.  They also note that Weischedel was not a party to the Briese Plaintiffs' original action filed on November 2, 2009.  The Briese Plaintiffs' First Amended Complaint, in which Weischedel is first named as a Defendant, was filed on March 2, 2010, more than three months after expiration of the three-year limitations period.  Thus, they argue, the claims against her are time-barred.  Id. at 12-14.

Fourth, the State Defendants argue that the First Amended Complaint fails to comply with basic pleading requirements in the following ways: (1) it violates Rule 8(a)(2) because: (a) with 89 pages, it is

not "short," id. at 15; (b) it does not give the State Defendants fair notice

of the claims and grounds for the claims because it fails to delineate

clearly which Defendants did what, id. at 15-19; and (c) it contains

factual allegations that, if deemed true, make other factual allegations

and claims implausible, id. at 18-20; and (2) it does not allege, and

Montana law does not support, the theory that Erene automatically

assumed the right to custody of the children upon David's death, id. at

20-23.

Fifth, the State Defendants argue that the Briese Plaintiffs' have

failed properly to allege claims under the ADA and RA.  They argue that

the allegations of Counts XV and XVI are conclusory because Erene

"does not identify her disability, the benefit denied, or any factual

context for her claims."  Id. at 24.  Thus, the State Defendants argue, the

allegations supporting Counts XV and XVI do not meet the "facial

plausibility" standard necessary to withstand a motion to dismiss.  Id. at

25.  For example, they argue, the Briese Plaintiffs' contention that

Erene had custody of the children before they allegedly were removed

from her "is contradicted by the allegations that a previous court order

7

had deprived Erene ... of any contact with her children except for

supervised visitation."  Thus, they argue, "[t]he allegations that Ms.

Weischedel removed the children fail the facial plausibility test."  Id.

In response, with respect to the State Defendants' challenge to

Count X, the Briese Plaintiffs argue that:

> [t]he question that is presently before this Court ... is not
> whether the State or [DPHHS-CFSD] is subject to suit under
> § 1983: the question is whether state employees (in this case,
> DPHHS-CFSD Social Workers) may be personally liable for
> damages under § 1983 based upon actions taken while in
> their official capacity.  The answer to this question is yes.

Pltfs' Resp. to State Defts' Mtn. to Dismiss (Court Doc. 74) at 3

(emphasis omitted).  The Briese Plaintiffs argue that State and DPHHS-

CFSD social workers sued in their personal or individual capacities are

"persons" within § 1983's meaning even if their acts giving rise to the

claims against them were performed in their capacity as State

employees.  Id. at 3-4.

Second, with respect to the State Defendants' argument that the

Eleventh Amendment bars state law claims (Counts IV, V, and IX)

against the State and DPHHS-CFSD, the Briese Plaintiffs concede that

the State is immune.  But, they argue, State officials sued in their

8

individual capacities are not immune.  They claim that "State DPHHS-CFSD Social Workers 'are sued in their personal capacity for actions taken under color of state law.'" Id. at 4-5 (quoting Court Doc. 51 at 4). Thus, they argue, their "state law claims are not barred by the Eleventh Amendment."  Id. at 5-6.

Also, the Briese Plaintiffs argue that DPHHS-CFSD social workers do not have immunity from liability under MCA § 2-9-305(5), "which authorizes the immunization, defense and indemnification of public officers and employees" where, as here, they are sued in their individual capacities.  Id. at 6-7.  Moreover, they argue, Montana's indemnification statute does not confer Eleventh Amendment immunity upon State employees sued in their individual capacity.  Id. at 7-8.

Third, the Briese Plaintiffs argue that their claims against Weischedel are not barred by the statute of limitations.  They concede that they "omitted naming Weischedel in [the] caption in [the] original complaint[.]" Id. at 8.  But they argue that they "specifically named" her in the complaint's body, "which provided fair notice of the claims against her."  Id.  The Briese Plaintiffs also argue that: (1) their claims against

9

Weischedel "relate back" to the filing of the original complaint under

Rule 15(c); (2) Weischedel "received timely notice of the action and will

not [be] prejudiced in defending the claims on the merits"; (3)

Weischedel "knew that the action would be brought against her"; and (4)

the limitations period applicable to claims against Weischedel is tolled

under the continuing tort doctrine.  Id. at 8-11.

Fourth, the Briese Plaintiffs argue that the First Amended

Complaint complies with basic pleading requirements.  They argue that

it, "read as a whole does more than provide 'fair notice of what the

Plaintiffs' claims are and the grounds upon which they rest.'" Id. at 12-

13.  They also argue, with respect to the State Defendants' argument

that David's death did not result in Erene's automatic right to custody of

the children, that "violation of Erene['s] right to due process does not

depend upon an interpretation of Montana state custody statutes."  Id.

at 13-15.

Fifth, the Briese Plaintiffs argue that they properly alleged ADA

and RA claims.  They argue that Erene suffered discrimination when

Weischedel "regarded [her] as having [a disabling] impairment" because

10

of her bi-polar disorder.  Id. at 15.  They also argue that the benefit they were denied was the State Defendants' failure "to provide parents who are allegedly diagnosed with bi-polar disorder the same procedural protections afforded to other parents" when confronted with the issue of whether their children should be removed from their care.  Id. at 15-17.

In reply, the State Defendants argue that: (1) the Briese Plaintiffs "appear to concede that the State and DPHHS-CFSD are not amenable to suit under § 1983" and that Count X, to the extent it is against the State and DPHHS-CFSD, should be dismissed, State Defts' Reply (Court Doc. 79) at 2-3; (2) Eleventh Amendment immunity bars the state law claims in Counts IV, V, and IX against the State and DPHHS-CFSD, id. at 3; (3) Weischedel is immune from liability on Counts IV, V, and VIII because she was a State employee acting within the course and scope of her employment at all relevant times, id. at 3-4; (4) Weischedel is immune from liability on Counts IV, V, and VIII under the Eleventh Amendment because the State is the proper defendant with respect to these claims, id. at 4-5; (5) all claims against Weischedel are barred by the applicable statute of limitations and neither the requirements for

11

relation back to the filing of the original complaint nor the requirements for tolling under the continuing tort doctrine are met, id. at 6-11; (6) none of the eight counts against the State Defendants properly alleges a claim upon which relief can be granted because of fatal pleading defects, id. at 11-14; and (7) the Briese Plaintiffs still have failed to identify "any services, programs, or activities that [Erene] was denied by the State or DPHHS-CFSD because of her disability" sufficient to state a claim under the ADA or RA, id. at 14.

     3.   **Analysis**

          a.   **The State and DPHHS-CFSD are not "persons" for purposes of § 1983 and Count X against them should be dismissed**.

The State Defendants' motion should be granted to the extent it seeks dismissal of Count X against the State and DPHHS-CFSD.

Section 1983 provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir.2004) (internal quotation marks omitted)).  The statute's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights."  *Id*. (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir.2000)).

It is well-settled, however, that states are not "persons" subject to liability for purposes of § 1983.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).  Thus, the State is not a "person" under § 1983 and Count X against it should be dismissed.

Similarly, state agencies are not "persons" for purposes of § 1983.  *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  Under Montana law, DPHHS-CFSD is a

13

state agency.  See *Blackburn v. Blue Mountain Women's Clinic*, 951 P.2d 1, 16 (Mont. 1997); MCA § 2-15-104(2)(a).  Thus, DPHHS-CFSD is not a "person" under § 1983 and Count X against it should be dismissed.

In reaching the above conclusion, the Court notes that the Briese Plaintiffs' argument that State social workers sued in their individual capacities are "persons" within § 1983's meaning misses the point.  The State Defendants have not argued that such individuals sued in their individual capacities are not "persons" for purposes of § 1983.  Rather, as discussed above, they argue only that the State and DPHHS-CFSD are not "persons" subject to § 1983 liability.  As noted, the Court agrees.

> **b**.   **The State and DPHHS-CFSD are immune under the Eleventh Amendment and Counts IV, V, and IX against them should be dismissed**.

The State Defendants' motion should be granted to the extent it seeks dismissal of Counts IV, V, and IX – that is, the Briese Plaintiffs' state law claims – because such claims are barred by Eleventh Amendment immunity.  The Eleventh Amendment to the U.S. Constitution states:

> The judicial power of the United States shall not be

14

construed to extend to any suit in law or equity, commenced
or prosecuted against one of the United States by Citizens of
another State, or by Citizens or Subjects of any Foreign
State.

U.S. CONST. amend XI.

"The ultimate guarantee of the Eleventh Amendment is that

nonconsenting States may not be sued by private individuals in federal

courts." *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d

775, 777 (9th Cir. 2005) (quoting *Board of Trustees of Univ. of Ala. v.

Garrett*, 531 U.S. 356, 363 (2001)).[2]  The Eleventh Amendment bars

claims against states in federal court that are based on violations of

state law.  See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

124-25 (1984); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973-74 (9th

Cir. 2004).  It also bars claims against state agencies.  *Beentjes*, 397 F.3d

at 777.

Eleventh Amendment immunity may be abrogated by an

"unequivocal expression" of Congressional intent.  *Tennessee v. Lane*,

_____

[2]"Though its language might suggest otherwise, the Eleventh
Amendment has long been construed to extend to suits brought against a
state by its own citizens, as well as by citizens of other states." *Brooks v.
Sulphur Springs Valley Elec. Corp.*, 951 F.2d 1050, 1053 (9th Cir. 1991)
(internal citations omitted).

541 U.S. 509, 517 (2004); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1184-85 (9th Cir. 2003).  Also, states may waive Eleventh Amendment immunity if they unequivocally state that they consent to suit in federal court.  See *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-06 (1990); *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).

Here, Congress has not unequivocally expressed its intent to abrogate the State's Eleventh Amendment immunity from suit in federal court for alleged violations of state law.  Also, the State has not waived its Eleventh Amendment immunity or consented to litigate the state law claims brought against it and DPHHS-CFSD in this case in federal court.  The Briese Plaintiffs have neither argued nor shown that immunity has been abrogated or waived.  Thus, the State and DPHHS-CFSD enjoy Eleventh Amendment immunity and their motion should be granted to the extent it seeks dismissal of Counts IV, V, and IX against them.

Again, in reaching this conclusion, the Court notes that the Briese Plaintiffs miss the mark in arguing that State social workers sued in

their individual capacities are not protected by Eleventh Amendment immunity.  The State Defendants' motion, as discussed here, is limited to an assertion of Eleventh Amendment immunity for the State and DPHHS-CFSD.  As noted, their motion is well-taken in this respect and should be granted.

> ### c.   The Briese Plaintiffs' ADA claim against the State and DPHHS-CFSD and RA claim against DPHHS-CFSD in Counts XV and XVI, respectively, should be dismissed.

The State Defendants' motion should be granted to the extent it seeks dismissal of Count XV (ADA claim) against the State and DPHHS-CFSD and Count XVI (RA claim) against DPHHS-CFSD.  The Court concludes that the Briese Plaintiffs have failed properly to state claims under the ADA and RA upon which relief can be granted, thus subjecting Counts XV and XVI to dismissal under Rule 12(b)(6).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, ___

17

U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Facts that are "merely consistent with" a defendant's liability fall short of this standard.  *Id*.  Furthermore, the Court is not obligated to accept as true

18

"legal conclusions" contained in the complaint.  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id*. at 1950.

In this case, the Court concludes that the Briese Plaintiffs have not alleged grounds for their entitlement to relief that satisfy the above pleading standard.  Title II of the ADA prohibits discrimination on the basis of an individual's disability.  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Section 504 of the RA similarly prohibits discrimination on the basis of an individual's disability.  *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999) (comparing 42 U.S.C. § 12132 with 29 U.S.C. § 794).  Title II of the ADA, modeled after Section 504 of the RA, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

To state a claim under Title II of the ADA or under the RA, a

19

plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Zukle*, 166 F.3d at 1045.[3]  In the context of the ADA, Congress has defined the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

In the case at hand, the Briese Plaintiffs have alleged that Weischedel, an employee of DPHHS-CFSD, communicated to Defendant

_____

[3]The Ninth Circuit has noted:

> There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes[.]

*Zukle*, 166 F.3d at 1045, n.11 (internal citations and quotations omitted).

Joanne Briese on the day of David Briese's death not to release Erene and David's children to Erene because DPHHS-CFSD would be intervening on the children's behalf.  Court Doc. 51 at ¶ 75.  They allege that Joanne (David's mother) responded that the children were in the care of Defendant Dawn Macey, with whom David had been living and with whom David had been involved in a relationship at the time of his death.  The Briese Plaintiffs contend that Weischedel's action "constituted a removal of the children and the deprivation of the mother, [Erene's] right to custody and control of her children."  Id.

The Briese Plaintiffs further allege that Weischedel prepared a document over the two weeks following her communication with Joanne in which she reported, inter alia, that: (1) Erene reportedly had been diagnosed with bi-polar disorder, id. at ¶ 82.D.; (2) "[t]here is sufficient information to indicate that Erene's emotional state represents a risk of harm to the boys.  They are not in her care and a petition for TIA (sic) file[,]" id. at ¶ 82.C.; (3) a serious risk that "acts of family violence pose an immediate and serious physical and/or emotional danger to the child[,]" because "there is evidence to suggest that Erene [ ] has made

21

serious threats against the boys, other family members and citizens in the community[,]" id. at ¶ 82.E.; and (4) that the situation for the children was "unsafe" such that a "Petition [was] filed, child removed from home[,]" id. at ¶ 82.F.

The Briese Plaintiffs ultimately allege that: (1) Weischedel regarded Erene as disabled because of her mental health history and/or purported diagnosis of bi-polar disorder, id. at ¶ 83; (2) Weischedel did not provide Erene with an opportunity to address concerns until 11 days after removal of the children, id. at ¶ 84; and (3) Weischedel and the State "did not attempt to provide reasonable accommodations or any other type of assistance prior to taking State coercive action of removing the children from [Erene's] care, id. at ¶ 85.

The Court concludes that the Briese Plaintiffs do not properly allege ADA and RA claims.  Their allegations fail to meet Iqbal's "facial plausibility" standard for several reasons, including those that follow.

First, although the Briese Plaintiffs accuse Weischedel of wrongfully removing the children from Erene's care after David's death, their own pleading indicates that Erene did not have custody of the

children at the time of David's death.  They acknowledge that a previous court order had deprived Erene of any contact with the children except for supervised visitation.  Court Doc. 51 at ¶¶ 19 and 21.  Also, they expressly state that the children were in Dawn Macey's care at the time of David's death.  Id. at ¶ 76.  Thus, their allegation that Weischedel removed the children from Erene fails *Iqbal*'s facial plausibility standard.

Second, as noted, the ADA and RA require that a person making a discrimination claim must be a disabled person, or a person regarded as being disabled, who also is "qualified to participate in or receive the benefit of a public entity's services, programs, or activities." *Thompson*, 295 F.3d at 895; *Zukle*, 166 F.3d at 1045.  The Briese Plaintiffs have not alleged how Erene was so qualified.  Instead, they offer only the conclusory argument in their response brief that the DPHHS-CFSD is responsible for enforcing Montana's policy of not only protecting children but also trying to "achieve [this] purpose[] in a family environment and preserve the unity and welfare of the family whenever possible[.]" Court Doc. 74 at 16 (quoting MCA § 41-3-101(1)(b)).  This is insufficient under

23

the pleading standard set forth above.

Third, although the Briese Plaintiffs focus on their contention that Weischedel sought to prevent Erene from regaining custody of the children based on Erene's "reported diagnosis of bi-polar disorder," Court Doc. 51 at ¶ 80, their own pleading makes this contention implausible. They acknowledge, by alleging in their First Amended Complaint, that Weischedel also determined that a serious risk existed that "acts of family violence pose an immediate and serious physical and/or emotional danger to the child[ren]." They concede in their pleading that Weischedel reported that "there is evidence to suggest that Erene ... has made serious threats against the boys, other family members and citizens in the community[,]" id. at ¶ 82.E., and that the situation for the children was "unsafe[,]" id. at ¶ 82.F. These additional allegations clearly indicate that Weischedel sought to prevent Erene from regaining custody of the children because of evidence that Erene had "made serious threats against the boys" and others. The Briese Plaintiffs' allegation that Weischedel subjected Erene to "exclusion, denial of benefits, or discrimination" because of her perceived disability

24

thus fails *Iqbal*'s facial plausibility standard.

For the foregoing reasons, the Court concludes that the Briese Plaintiffs failed properly to allege ADA and RA claims.  As noted, their allegations in support of these claims fail to meet *Iqbal*'s "facial plausibility" standard.  Thus, the State Defendants' motion should be granted to the extent it seeks dismissal of Count XV against the State and DPHHS-CFSD and Count XVI against DPHHS-CFSD.

### d.   <u>The Briese Plaintiffs' claims against Weischedel should be dismissed because they are time-barred</u>.

The State Defendants' motion should be granted to the extent it seeks dismissal of Counts IV, V, VIII, X, and XIV against Weischedel.  The Court concludes that all claims against Weischedel are time-barred as discussed below.

The Briese Plaintiffs' claims against Weischedel are state law tort claims and § 1983 claims.  Because § 1983 contains no specific statute of limitations, federal courts borrow state statutes of limitation for personal injury actions in § 1983 cases.  See *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048

25

(9th Cir. 2008).  The limitations period for such claims in Montana is three years after the action "accrues."  *Harvey v. Waldron*, 210 F.3d 1008, 1013 (9th Cir. 2000) (citing MCA § 27-2-204(1)).  Thus, the limitations period for all of the Briese Plaintiffs' claims against Weischedel is three years from when the claims accrued.

The question of when a claim accrues is slightly different depending upon whether the claim arises from state law or federal law. Under Montana law, "the period of limitation begins when the claim or cause of action accrues."  MCA § 27-2-102(2).  "[A] claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court ... is authorized to accept jurisdiction of the action[.]"  MCA § 27-2-102(1)(a).  In more direct terms, this Court, applying Montana law, "has held that a right of action in tort accrues upon injury."  *Montana Pole & Treating Plant v. I.F. Laucks and Company*, 775 F.Supp. 1339, 1348 (D. Mont. 1991) ("*Montana Pole I*") (citing *Buhl v. Biosearch Medical Products*, 635 F.Supp. 956, 959 (D. Mont. 1985) and *Much v. Sturm, Ruger & Co., Inc.*, 502 F.Supp. 743, 744

26

(D. Mont. 1980), aff'd, 685 F.2d 444 (9th Cir. 1982)).

"Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation."  MCA § 27-2-102(2); *see also Montana Pole I*, 775 F.Supp. at 1348 ("the fact that a party with a cause of action has no knowledge of his rights, or even the facts out of which the cause arises, does not delay the running of the statute of limitations.") (citations omitted).[4]

With respect to the Briese Plaintiffs' federal law claims, "[f]ederal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 claim.  A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991) (citations and internal quotations omitted).

In the case at hand, the Briese Plaintiffs filed their original complaint on November 3, 2009.  Pltfs' Cmplt. for Damages and Demand

---

[4]With respect to the Briese Plaintiffs' state law claims, federal courts borrow applicable state law provisions for tolling limitations periods. *Wallace*, 549 U.S. at 394; *Hardin v. Straub*, 490 U.S. 536, 539 (1989).

for Jury Trial (Court Doc. 1).  The original complaint does not name

Weischedel as a defendant.  Id. at 1, 4-7.  It does include Weischedel, by

name, however, in many of the allegations.  Id. at ¶¶ 68-70, 72-73, 75-76,

82-83, and 87.  Also, according to the Briese Plaintiffs' First Amended

Complaint, the allegations concerning Weischedel arise from events that

occurred between November 3, 2006, and November 17, 2006.  Court

Doc. 51 at ¶¶ 75-77, 82, 86, 88-89, 91-92, and 98-99.  But the Briese

Plaintiffs filed their First Amended Complaint, in which they did name

Weischedel as a defendant, on March 2, 2010 – more than three months

beyond expiration of the three-year limitations period.  Thus, the first

question before the Court is whether the Briese Plaintiffs' filing of the

First Amended Complaint relates back to the date of the filing of the

original complaint, thus rendering the claims against Weischedel timely.

For the following reasons, the Court concludes that it does not.

Rule 15(c) states in relevant part as follows:

(1)     When an Amendment Relates Back.  An amendment to a
        pleading relates back to the date of the original pleading
        when:

        *       *       *

28

(C)     the amendment changes the party or the naming of the
        party against whom a claim is asserted, if Rule
        15(c)(1)(B) is satisfied and if, within the period provided
        by Rule 4(m) for serving the summons and complaint,
        the party to be brought in by amendment:

       (i)     received such notice of the action that it will not
                be prejudiced in defending on the merits; and

       (ii)    knew or should have known that the action would
                have been brought against it, but for a mistake
                concerning the proper party's identity.

The purpose of Rule 15(c) is "to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party." *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (quoting *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857-58 (9th Cir. 1986)).  Put another way, "[t]he mistake under Rule 15(c) has to be as to identity[.]" *Louisiana-Pacific Corp. v.. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993). In *Louisiana-Pacific*, the Ninth Circuit held that the district court did not abuse its discretion in denying ASARCO's Rule 15(c) motion where ASARCO had known about the actions of the party relation back was sought against, but had not realized it should have sued that party. *Id*. The court noted "[t]here was no mistake of identity, but rather a

29

conscious choice of whom to sue." *Id*.

In contrast, in *Pan Ocean* the plaintiff mistakenly sued the agent of a disclosed principal, and sought to add the principal as a defendant pursuant to Rule 15(c).  23 F.3d at 1500. Ninth Circuit affirmed the district court's grant of the plaintiff's motion to add a defendant because "[t]he complaint gave [the new defendant] reason to believe that [the plaintiff] had made a mistake." Id. at 1504.

Here, the Court concludes that the Briese Plaintiffs' claims in the First Amended Complaint against Weischedel do not relate back to the date that the Briese Plaintiffs filed their original complaint.  There is nothing to indicate that the Briese Plaintiffs made a mistake as to Weischedel's identity.  In fact, as noted *supra*, they specifically identified her, by name, in several allegations in the original complaint.  Court Doc. 1 at ¶¶ 68-70, 72-73, 75-76, 82-83, and 87.  Those allegations include her alleged actions and omissions giving rise to the Briese Plaintiffs' claims against her that they ultimately set forth in their First Amended Complaint.

The Court must conclude, from a comparison of the original

complaint with the First Amended Complaint, that the Briese Plaintiffs made a conscious choice about whom to sue.  There is no suggestion or indication that this is an instance of mistaken identity.  The Briese Plaintiffs clearly knew who Weischedel was and what her role was in the circumstances giving rise to their claims.  Relation back through Rule 15(c) is, therefore, unavailable.  See *Louisiana-Pacific*, 5 F.3d at 434; see also *Dawson v. Borges*, 2007 WL 3105076, 2 (N.D. Cal. 2007) (holding that addition of new defendant, rather than substituting or correcting name of existing defendant, is outside the scope of Rule 15(c)); *Wells v. HBO & Co.*, 813 F.Supp. 1561, 1567 (N.D. Ga. 1992) ("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.") (citing *Keller v. U.S.*, 667 F.Supp. 1351, 1357-58 (S.D. Cal. 1987) (no mistake where party knew before statute of limitations period expired that it could name defendant but did not)).

The next question that the Court faces, then, is whether any of the Briese Plaintiffs' claims against Weischedel fall within a "continuing tort" theory of recovery.  If not, the claims against Weischedel are

31

time-barred.

Montana law recognizes a "continuing tort" theory only in limited circumstances related to certain causes of action.  See Montana Pole & Treating Plant v. I.F. Lauks and Co., 993 F.2d 676, 679 (9th Cir. 1993) ("Montana Pole II") ("So far, Montana courts have applied the continuing nuisance/continuing injury rationale only to nuisance cases"); see also Gomez v. State, 975 P.2d 1258, 1261-63 (Mont. 1999) (rejecting continuing tort theory in products liability and negligence case).  An action to recover for a continuing tort, when the theory applies, is not barred by the statute of limitations.  Shors v. Branch, 720 P.2d 239, 244 (Mont. 1986).  Continuing torts are "those torts in which the tortious act can be readily abated."  Id., at 243 (citing Haugen Trust v. Warner, 665 P.2d 1132, 1135 (Mont. 1983)).  A plaintiff may recover on a continuing tort those "damages accruing within the statutory period preceding commencement of the action."  Id., at 243.

The Montana Supreme Court has consistently addressed application of the continuing tort doctrine as a question of law.  See Knight v. City of Missoula, 827 P.2d 1270, 1277-79 (Mont. 1992);

Graveley Ranch v. Scherping, 782 P.2d 371, 373-75 (Mont. 1989). Also, no party here argues that the doctrine's application is a question of fact.

With respect to the Briese Plaintiffs' claims against Weischedel premised on state law (Counts IV, V, and VIII), the Court concludes that the continuing tort theory does not apply. As noted above, under Montana law, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court ... is authorized to accept jurisdiction of the action[.]" MCA § 27-2-102(1)(a). More directly, a cause of action "in tort accrues upon injury." *Montana Pole I,* 775 F.Supp. at 1348 (citations omitted).

Here, the Briese Plaintiffs' First Amended Complaint alleges that Weischedel's conduct on November 3, 2006, "constituted a removal of the children and the deprivation of the mother, [Erene's] right to custody and control of her children." Court Doc. 51 at ¶ 75. Thus, their "injury" occurred on that date and their causes of action related thereto accrued on that date. They have not indicated, in any way, how the injuries they allegedly sustained by Weischedel's conduct could be "readily abated" or

argued persuasively that the continuing tort theory should be applied to their causes of action against Weischedel.

With respect to the Briese Plaintiffs' claims against Weischedel premised on federal law (Counts X and XIV), the Court reaches the same result.  As noted, "[a] federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Bagley, 923 F.2d at 760 (citations and internal quotations omitted).

As with the Briese Plaintiffs' state law claims against Weischedel, their federal law claims against her began with Weischedel's conduct on November 3, 2006, which they contend "constituted a removal of the children and the deprivation of the mother, [Erene's] right to custody and control of her children."  Court Doc. 51 at ¶ 75.  Under federal as well as Montana law, their "injury" occurred on that date such that their causes of action stemming from the injury accrued on that date. Because they filed their action naming Weischedel more than three years beyond that date, their claims are not timely.

The Court also notes that it is not persuaded by the Briese Plaintiffs' reliance on Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir.

2002), for their argument that the continuing tort doctrine applies in this case.  First, Flowers was a diversity case applying Nevada law.  Id. at 1123.  Second, the Ninth Circuit, in rejecting application of the continuing tort doctrine in Flowers, noted that the doctrine "applies where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" Id. at 1126 (quoting Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984)).  In this case, it is reasonable to conclude, for purposes of determining whether the continuing tort doctrine applies, that Weischedel's alleged action of depriving Erene of custody of her children can "fairly and realistically be identified as the cause of significant harm."  Thus, the continuing tort doctrine does not apply.

For the foregoing reasons, the Court concludes that the State Defendants' motion should be granted to the extent it seeks dismissal of Counts IV, V, VIII, X, and XIV against Weischedel.  The claims are time-barred.  Having reached this conclusion, the Court finds it unnecessary to address the State Defendants' other bases for dismissal of these claims.

**B.**   **Kendall Jackson's Alternative Motions (1) To Dismiss the Complaint or (2) For Judgment on the Pleadings**

      **1.**   **The Briese Plaintiffs' Claims Against Defendant Kendall Jackson**

The Briese Plaintiffs assert the following five Counts against

Defendant Kendall Jackson ("Jackson"):

1. Count IV:   negligent infliction of emotional distress (Court Doc. 51 at 73);

2. Count V:   intentional infliction of emotional distress (Court Doc. 51 at 74);

3. Count VIII:   tortious interference with parental relationship (Court Doc. 51 at 76);

4. Count IX:   violation of right to privacy – false light (Court Doc. 51 at 76-77); and

5. Count X:   § 1983 claim – conspiracy (Court Doc. 51 at 77-78).

    Jackson's motion seeks dismissal of all five Counts to the extent

that the Briese Plaintiffs assert them against him.

      **2.**   **The Parties' Arguments**

    Jackson relies on Rule 12(b)(6) in seeking dismissal of the Briese

Plaintiffs' claims against him and, in the alternative, on Rule 12(c) for

judgment on the pleadings.  In briefing, he concedes that his motion, to

the extent it relies on Rule 12(c), is premature.  Jackson's Reply Br. (Court Doc. 85) at 3.  Thus, to the extent it seeks judgment on the pleadings under Rule 12(c), Jackson's motion should be denied.

To the extent Jackson's motion seeks dismissal under Rule 12(b)(6), he argues that: (1) he is immune, under Montana law, from any liability arising from his reporting of suspected child abuse or neglect, Jackson's Br. in Support (Court Doc. 60) at 11-12; (2) mental health professionals, such as Jackson, may not assert privilege with respect to reporting suspected child abuse or neglect, id. at 12-13; (3) so-called "mandatory reporters" of suspected child abuse or neglect must provide any information that they believe might be helpful, not just information subject to prior consents or to judicial tests of admissibility, id. at 13-14; (4) Jackson's reporting does not give rise to any cause of action because: (a) Erene has failed to demonstrate that Jackson owed her any duty, id. at 14-15; (b) Erene has not claimed that Jackson was negligent or that he breached any standard of care, id. at 15; (c) Erene has failed to allege facts sufficient to establish a claim of false light invasion of privacy, id. at 16; (d) Erene's only alleged facts against Jackson are that he received

information from people and then made recommendations about Erene's contact with the children, id. at 16-17; and (e) Erene's life was replete with tumultuous circumstances at the time giving rise to her allegations against Jackson such that it would "be difficult, if not impossible as a matter of law, to plead or prove a causal link between any of [Jackson's] actions and [Erene's] claimed damages[,]" id. at 17-19; (5) the claims against Jackson fail because they fail to meet *Iqbal's* pleading standard, id. at 19; and (6) the § 1983 claims against Jackson fail because Jackson is not and, at all relevant times, was not a "state actor" as § 1983 requires, id. at 20-21.

In response, the Briese Plaintiffs argue that: (1) Jackson is not immune from liability under Montana law because his actions were outside of the scope of those covered by the immunity statute in the following ways:  (a) he was not acting as a mandatory reporter when he met with Weischedel, Briese Pltfs' Resp. Br. (Court Doc. 82) at 3-4; (b) he did not know or have reasonable cause to suspect abuse by Erene, id. at 4; (c) he did not "promptly report" any allegations to DPHHS-CFSD, id.; and (d) the Briese Plaintiffs' allegations include actions taken by

38

Jackson both prior to and after DPHHS-CFSD's involvement with the family, id. at 4-5; (2) other jurisdictions have concluded that statutory immunity is not available for reporters of child abuse and neglect whose actions are beyond the scope of the immunity statute's terms, id. at 5; (3) they have properly alleged a cause of action against Jackson but, if their pleading is deemed to be insufficient, they should be given the opportunity to amend it, id. at 6-7.

In reply, Jackson argues that the Briese Plaintiffs: (1) have offered no factual bases for their claims against him, Court Doc. 85 at 3-5; (2) have not effectively rebutted his claim of immunity, id. at 5-6; (3) rely on distinguishable, non-Montana authority in arguing that Jackson's actions fall outside of the scope of Montana's statute giving immunity to those who report child abuse and neglect, id. at 6-7; (4) failed to address his arguments that: (a) their tort claims against him should be dismissed because he owed Erene no duty, id. at 8; (b) their pleading does not demonstrate a causal connection between his recommendations and any alleged injury or damage, id.; and (c) he was not a "state actor" under § 1983, id.; and (5) should not be granted yet another opportunity

39

to amend their complaint, id. at 8-9.

### 3.   <u>Analysis</u>

The Court's analysis of the motion at hand necessarily begins with Montana's statutory scheme that concerns child abuse and neglect reporting.  MCA § 41-3-201 requires mental health professionals, among others, to report the matter to the DPHHS when they "know or have reasonable cause to suspect, as a result of information they receive in their professional or official capacity, that a child is abused or neglected[.]" Not only is the reporting of such information by mental health professionals mandatory under such circumstances, the failure to so report subjects the mental health professional to civil liability and criminal sanctions.  MCA § 41-3-207(1) (if person required under § 41-3-201 to report abuse or neglect fails to do so, person "is civilly liable for the damages proximately caused by such failure"); MCA § 41-3-207(2) (if person required under § 41-3-201 to report abuse or neglect purposely and knowingly fails to do so, person "is guilty of a misdemeanor").

A related statute grants immunity to anyone who reports any incident of child abuse or neglect under MCA § 41-3-201.  MCA § 41-3-

40

203(1).  Exceptions to such immunity are triggered if the person

reporting "[1] was grossly negligent or [2] acted in bad faith or with

malicious purpose or [3] provided information knowing the information

to be false."  Id.

In the case at hand, the Court concludes that Jackson is the type of

mental health professional upon whom MCA § 41-3-201 imposes an

obligation to report child abuse or neglect.  The Briese Plaintiffs allege

in their First Amended Complaint that Jackson "is a licensed

professional counselor in the State of Montana [who] provided

professional mental health therapy and counseling services to JDB and

JRB."  Court Doc. 51 at ¶ 4.D.

Under MCA § 41-3-203(1), therefore, Jackson is immune from

liability for reporting abuse or neglect of the children unless one of the

exceptions listed in the statute apply.  The Court concludes, for the

reasons that follow and based upon the Briese Plaintiffs' First Amended

Complaint, that none of the exceptions to immunity are at issue.  Thus,

Jackson is immune from liability.

First, the Briese Plaintiffs have not alleged that any of Jackson's

actions were "grossly negligent."  See MCA § 41-3-203(1).  None of the

allegations in the Briese Plaintiffs' First Amended Complaint that

mention Jackson state or infer that he acted with gross negligence.

Second, the Briese Plaintiffs have not alleged that Jackson "acted

in bad faith or with malicious purpose."  Id.  Although they argue that

they allege Jackson "was not acting as a mandatory reporter in either [of

his] communication[s] with Weischedel[,]" Court Doc. 82 at 4 (citing

Court Doc. 51 at ¶ 86), that allegation is not a fact.  Rather, it is a legal

conclusion.  And, the Briese Plaintiffs' allegations do not support that

legal conclusion.  As noted above, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of

action will not do ... ."  *Twombly*, 550 U.S. at 555 (internal quotation

marks and citation omitted).  "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129

S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

Third, the Briese Plaintiffs have not alleged that Jackson

"provided information knowing the information to be false."  See MCA §

41-3-203(1).  Instead, they allege that Jackson received information from other individuals and made recommendations based upon that information that Erene not have contact with the children.  Court Doc. 51 at ¶ 63.  There is no allegation that Jackson knew any information he conveyed was false.

In light of the foregoing, the Court concludes that MCA § 41-3-203(1) grants Jackson immunity from liability and that no exceptions to the grant of immunity exist.  Also, the Court is not persuaded by the Briese Plaintiffs' other arguments in opposition to Jackson's motion.

First, although they argue in their brief that Jackson did not know or have reasonable cause to suspect abuse by Erene, Court Doc. 82 at 4, they neither made that allegation nor stated facts in their pleading from which that inference could be drawn.  Also, even if they had so alleged, the reporting statute required Jackson to report abuse or neglect that he had "reasonable cause to suspect," MCA § 41-3-201(1), and to include in his report "any information that [he] believes might be helpful" or that led him to believe that abuse or neglect had occurred.  MCA § 41-3-201(6)(c) & (d).

43

Second, although the Briese Plaintiffs argue that Jackson did not "promptly report" any allegations to DPHHS-CFSD, Court Doc. 82 at 4, they did not allege this in their pleading. Even if they had, as already noted, MCA § 41-3-203(1) grants Jackson immunity.

Third, with respect to the Briese Plaintiffs' argument that their allegations include actions taken by Jackson both prior to and after DPHHS-CFSD's involvement with the family, Court Doc. 82 at 4-5, the Court is not persuaded to change its analysis here. The Briese Plaintiffs offer no authority, and the Court is aware of none, that creates an additional exception to MCA § 41-3-203(1)'s grant of immunity as discussed above.

Fourth, the Briese Plaintiffs' reliance on cases from other jurisdictions on the immunity question is misplaced. They argue that other jurisdictions have concluded that statutory immunity is not available for reporters of child abuse and neglect when their actions are beyond the scope of the immunity statute's terms. But as the Court already has concluded, the Briese Plaintiffs' allegations with respect to Jackson do not bring his actions beyond the scope of Montana's

44

immunity statute's terms or within any of its exceptions.

Finally, the Briese Plaintiffs failed to address Jackson's argument that their § 1983 claim against him fails to state a claim because they did not allege that he is a state actor.  The Briese Plaintiffs' First Amended Complaint omits Jackson from the list of Defendants who the Briese Plaintiffs allege conspired to interfere with their familial relationship from which the § 1983 conspiracy claim (Count X) derives. For these reasons, Count X fails to state a claim against Jackson upon which relief can be granted.

For all of the foregoing reasons, the Court recommends that Jackson's motion to dismiss be granted.

### C.    **City of Billings' Motion to Strike Plaintiffs' Amended Complaint**

Defendant City of Billings ("Billings") has moved to strike the Briese Plaintiffs' First Amended Complaint under Rule 12(f).  Mtn. to Strike (Court Doc. 61).  Billings argues that the First Amended Complaint, spanning 89 pages and including more than 210 paragraphs, fails to comply with the requirements of Rules 8(a) and 8(d).  Billings' Br. in Support of Mtn. to Strike (Court Doc. 62) at 3-7.

45

In response, the Briese Plaintiffs concede that their pleading is "voluminous," but note that "there are numerous defendants and facts alleged in this case that have occurred over a period of years." Briese Pltfs' Resp. (Court Doc. 67) at 3. They argue that they have clarified their claims against the Billings Defendants. Id. And, they request that the Court deny Billings' motion, but agree that Billings should be required to answer only those paragraphs relevant to the Billings Defendants – identified as paragraphs "4C, 11, 17, 22, 23, 24, 62, 66, 67, 68 and 69 and [the] one count against the City of Billings defendants, which is Count XIII, which contains seven paragraphs." Id.

In reply, Billings argues that the Briese Plaintiffs have not "clarified" their claims against it in their First Amended Complaint, as they argue. Billings' Reply (Court Doc. 75) at 3. It notes that they instead fail to dispute Billings' arguments that the Briese Plaintiffs' allegations are "conclusory, redundant, ... largely immaterial to the claims asserted ..., contain[] lengthy quotes from deposition and hearing transcripts, ... unnecessarily describe[] Plaintiff Erene Briese's tumultuous relationship with her husband and his family[, ] ... [are]

46

based 'upon information and belief,' [are] verbose, confusing, redundant, and sometimes even scandalous." Id. at 2.

Billings also argues that: (1) although the Briese Plaintiffs must file a pleading with some "factual enhancement," they do not need to include "multiple pages of deposition and hearing testimony, unsubstantiated allegations of others' statements regarding Erene's mental health and family relationships, and conclusory assertions of 'systemic abuse of the judicial process[,]'" id. at 3; (2) most of the paragraphs that the Briese Plaintiffs argue relate to Billings "have nothing to do with Plaintiffs' single claim against [Billings] that it failed to follow a written policy or custom of assisting the public in civil matters by failing to assist Erene in locating her children following her husband's death[,]" id. at 3-4; and (3) the Briese Plaintiffs, and not the Court or Billings, should shoulder the burden of conforming their pleading to Rule 8(a)(2)'s "short and plain statement" requirement and Rule 8(d)'s requirement that each allegation "be simple, concise, and direct[,]" id. at 4-5.

Rule 12(f) allows the Court, on its own or on the motion of a party,

to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter."  The Ninth Circuit has observed that Rule 12(f) may be employed "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  But courts generally regard motions to strike with disfavor "because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *In re UTStarcom, Inc. Securities Litigation*, 617 F.Supp. 2d 964, 969 (N.D. Cal. 2009) (citations omitted).

The party moving to strike carries the burden of persuasion and, in light of the disfavored nature of such motions, the burden is "formidable." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 474 F.Supp. 2d 75, 79 (D. D.C. 2007).  The party moving to strike generally must satisfy two factors: (1) the challenged allegations must be clearly unrelated to the plaintiff's claims; and (2) the moving party must suffer prejudice if the court allows the allegations to remain

in the pleading.  *In re UTStarcom, Inc. Securities Litigation*, 617 F.Supp. 2d at 969 (citing *SEC v. Sands*, 902 F.Supp. 1149, 1166 (C.D. Cal. 1995) and *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 820 (N.D. Cal. 1992)).

In the case at hand, the Court shares much of Billings' concern as to the length, scope, and content of the Briese Plaintiffs' First Amended Complaint.  Nevertheless, the Court concludes that, in light of the number of Defendants and the multitude of allegations involving them contained in the pleading, it would not be practical or efficient to strike the entire document at this juncture in the proceedings, especially since this is the Briese Plaintiffs' second complaint.

Some defendants have already answered the pleading.  See, e.g., Court Docs. 56 (Tomicich), 57 (Joanne Briese), and 65 (Macey).  Others have filed dispositive motions, which the Court addresses herein.   Also, as noted above, the Briese Plaintiffs acknowledge that only a few of the pleading's paragraphs and only Count XIII relate to the Billings Defendants.  And they concede that the Billings Defendants should be required to respond only to those paragraphs and to the one Count

49

against them.

Billings has not argued persuasively that it will suffer unfair prejudice if the Court declines to strike the entire pleading. *In re UTStarcom, Inc. Securities Litigation*, 617 F.Supp. 2d at 969. This, coupled with the general disfavor with which courts view motions to strike, persuades the Court that Billings' motion should be denied. In so recommending, however, the Court also recommends that the Billings Defendants be required to respond only to paragraphs 4C, 11, 17, 22, 23, 24, 62, 66, 67, 68 and 69 and Count XIII of the Briese Plaintiffs' First Amended Complaint.

### D.   Jackson's Motion to Dismiss

Because the Court recommends above that Jackson's motion to dismiss (Court Doc. 59) be granted, it will not address this subsequently filed motion to dismiss and will recommend that it be denied as moot.

## III.   CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that:

1.   State Defendants' Motion to Dismiss First Amended Complaint (Court Doc. 54) be GRANTED;

2.   Defendant Kendall Jackson's Motion to Dismiss the Complaint

[under] Rule 12(b)(6) (Court Doc. 59) be GRANTED;

3.   City of Billings' Motion to Strike Plaintiffs' Amended Complaint (Court Doc. 61) be DENIED, but that the Billings Defendants be required to respond only to paragraphs 4C, 11, 17, 22, 23, 24, 62, 66, 67, 68 and 69 and Count XIII of the Briese Plaintiffs' First Amended Complaint; and

4.   Defendant Kendall L. Jackson's Motion to Dismiss (Court Doc. 76) be DENIED as moot.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 16th day of July, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge