IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ERENE BRIESE, Individually; JDB and JRB, Individually; Erene Briese as Personal Representative on behalf of the heirs of David L. Briese, Jr.,<br><br>        Plaintiffs,<br><br>vs.<br><br>STATE OF MONTANA, DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, CHILD AND FAMILY SERVICES DIVISION; SOCIAL WORKER PAM WEISCHEDEL, UNKNOWN JOHN DOES AND JANE DOES 1-20 Employees and Supervisors, Individually and Personally, YELLOWSTONE COUNTY, A Political Subdivision of the State of Montana, YELLOWSTONE COUNTY SHERIFF'S DEPARTMENT; YELLOWSTONE COUNTY SHERIFF; UNKNOWN JOHN DOES AND JANE DOES 1-20, Employees and Supervisors, Individually and in their official capacities; CITY OF BILLINGS, BILLINGS POLICE DEPARTMENT, Employees and Supervisors, Individually and in their official capacities; JOANNE BRIESE; J. GREGORY TOMICICH; DAWN MACEY, and KENDALL JACKSON,<br><br>        Defendants. | CV-09-146-BLG-RFC-CSO<br><br><br>FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE |

Plaintiffs Erene Briese, JDB, and JRB (collectively "Briese Plaintiffs") claim violations of various federal and state laws by State, County, City, and private Defendants. *Pltfs' First Am. Cmplt (DKT 51)*. Only Yellowstone County, the Yellowstone County Sheriff's Department, and the Yellowstone County Sheriff (collectively "County Defendants") remain as defendants. See *Order Adopting Findings and Recommendations of U.S. Magistrate Judge (DKT 93)* (dismissing State Defendants and Defendant Kendall Jackson); *Order Dismissing Defendant Dawn Macey (DKT 124); Order Adopting Findings and Recommendations of U.S. Magistrate Judge (DKT 127)* (dismissing Defendants Joanne Briese and J. Gregory Tomicich); and *Order for Dismissal (DKT 139)* (dismissing Defendants City of Billings and Billings Police Department).

Although the Briese Plaintiffs also named as County Defendants "UNKNOWN JOHN DOES AND JANE DOES 1-20, Employees and Supervisors, Individually and in their official capacities[,]" they have failed to identify them further and the time for doing so has passed. See *Scheduling Order (DKT 106)* (setting May 31, 2011 deadline for

2

motions to amend pleadings, including joinder of parties and identification of any "Doe" defendants).  Thus, to the extent the Briese Plaintiffs assert claims against any Yellowstone County employees and supervisors, individually and in their official capacities, such claims should be dismissed.

Now pending is the County Defendants' motion for summary judgment.  *DKT 143.*  Having reviewed the record, together with the parties' arguments in support of their positions, the Court makes the findings and recommendation discussed below.

I.  **BACKGROUND**

The Briese Plaintiffs' allegations concern events that sometimes overlap, span several months, and involve multiple parties.  Because only the County Defendants remain, the Court confines its discussion to those facts pertinent to claims against them.  Less relevant facts and allegations are included only to provide context.  The Court has taken many of the following facts from the Briese Plaintiffs' First Amended Complaint (*DKT 51*), the County Defendants' Answer (*DKT 63*) thereto, and exhibits that the parties filed in support of their positions

respecting the summary judgment motion at hand *(DKTs 147 – 147-8 and 151-1 – 151-14)*.[1]  Unless otherwise indicated, the facts are undisputed.

David L. Briese, Jr. ("David"), and Erene Briese ("Erene") were married on August 26, 2000.  They had two children – JDB, born in 1999, and JRB, born in 2000.  Erene also had a daughter from a previous marriage who lived with David and Erene during part of the relevant time.

On November 19, 2001, David began working as a deputy for the Yellowstone County Sheriff's Office.  He continued working as a deputy during all relevant times.

On April 16, 2004, David executed and filed a Petition for Dissolution of Marriage in *In Re: the Marriage of Briese*, DR 04-488, Montana Thirteenth Judicial District Court, Yellowstone County.  A summons was issued, but David did not have the Petition and summons served upon Erene at that time.

On December 29, 2005, the state court issued an "Ex Parte

---

[1]Some background information was mentioned in the Briese Plaintiffs' original Complaint.  *DKT 1.*

Custody Order; Temporary Order of Protection; Order Setting Hearing."  Erene was served with that document the same day.  The Ex Parte Custody Order granted David custody of JDB and JRB and granted Erene "visitation in a supervised environment[.]"  The Order of Protection, inter alia, removed and excluded Erene from David's residence and directed her to remain 1,500 feet away from the children's school.

On February 1, 2006, after a hearing, the state court entered an "Order of Protection and Interim Parenting Plan" in *In Re: the Marriage of Briese*.  The Order granted David "residential care of the parties' minor children during the pendency of this action or until further Order of this Court."  It also granted Erene "supervised parenting time[,]" directed her to stay 1,500 feet away from the children's school and daycare, and ordered her to "stay away from the former family home of the parties[.]"

On June 14, 2006, Erene reported to the Yellowstone County Sheriff's Office that David was using steroids and marijuana.  She reported that her daughter had witnessed David injecting himself.  She

5

also reported that David was accessing pornography on their computer through the Internet and that JDB and JRB, who were ages 5 and 6 at the time, had viewed the pornography.

The Yellowstone County Sheriff's Office conducted an internal investigation into Erene's allegations against David. The subject computer was provided to the Sheriff's Office, which sent it away to be examined by the cyber crimes unit. The Sheriff's Office requested that the computer be examined only for "child" pornography. Erene had not reported that David had been viewing child pornography. The results of the examination of the computer were that there were no images of child pornography.

Lt. Ron Wilson and Detective George Jensen, who were conducting the investigation, interviewed Erene, David, JDB, JRB, and Erene's daughter. Their investigation and the conclusions they reached are reflected in written reports in the record. See *DKTs 147-1 at 4-15, 147-2 at 1-15, 147-3 at 1-13.* In summary, the investigation concluded that: (1) the allegation that David viewed inappropriate materials on a personal computer was unfounded, *DKT 147-1 at 3*; (2) the allegation

that David was smoking marijuana had been disproved and was
unfounded, *id. at 2*; and (3) the allegation that David was shooting up
steroids was disproved, but it was determined that he had been taking
a supplement called DHEA, which is a steroid but is not illegal, *id*.

With respect to the allegations concerning steroid and marijuana
use, the Sheriff's Office concluded in August 2006 that it would take no
further action. *Id*. Respecting the complaints against David about
inappropriate images on the computer, the Sheriff's Office concluded in
October 2006 that it would take no further action. *Id. at 3*.

On November 3, 2006, David was on duty and was responding to a
request for assistance from another deputy sheriff. He was driving
more than 106 miles per hour and was not wearing a seat belt when he
lost control of his patrol vehicle. He was killed in the ensuing crash.
At the time of David's death, David and Erene were still married and
the "Order of Protection and Interim Parenting Plan" was still in effect.

On the day David was killed, Erene attempted through the
Billings Police Department and the Yellowstone County Sheriff's Office
to get assistance in retrieving JDB and JRB. Neither the police

7

department nor the Sheriff's Office assisted Erene in locating and obtaining physical possession of JDB and JRB.  Also on November 3, 2006, community social worker Pamela Weischedel ("Weischedel") informed David's mother, Joanne Briese ("Joanne") that the Montana Department of Public Health and Human Services, Child and Family Services Division ("DPHHS"), would be intervening on behalf of JDB and JRB and instructed Joanne not to release the children to Erene.

On November 9, 2006, DPHHS sought from the state court temporary investigative authority regarding JDB and JRB.  On November 14, 2007, more than one year later, DPHHS placed JDB and JRB in Erene's custody and monitored the family.  On January 24, 2008, DPHHS sought dismissal of the dependent/neglect case against Erene stating that there were no further safety issues that would warrant further involvement by DPHHS.

On November 3, 2009, the Briese Plaintiffs initiated this action.

## II.  THE BRIESE PLAINTIFFS' CLAIMS AGAINST THE COUNTY DEFENDANTS

The Briese Plaintiffs now assert the following ten counts against the County Defendants:

1. Count I:      under 42 U.S.C. § 1983 ("§ 1983"), alleging unwarranted state interference with their familial relationship in violation of Fourteenth Amendment due process rights and alleging failure to instruct, supervise, control, and discipline David or to intervene and provide medical or mental health treatment for him *(DKT 51 at ¶¶ 133-138)*;

2. Count II:     under § 1983, alleging municipal liability in having policies, procedures, customs, and practices not to discipline, prosecute, or take corrective or responsive action to complaints by citizens or to properly investigate complaints filed against officers evidencing deliberate indifference to constitutional rights and violating due process rights *(id. at ¶¶ 139-144)*;

3. Count III:    alleging negligence for breaching a duty to provide a safe work environment for employees and by violating policies and procedures for investigating substance abuse by officers resulting in injuries to the Briese Plaintiffs *(id. at ¶¶ 145-149)*;

4. Count IV:     alleging negligent infliction of emotional distress *(id. at ¶¶ 150-152)*;

5. Count V:      alleging intentional infliction of emotional distress *(id. at ¶¶ 153-154)*;

6. Count VI:     alleging negligent investigation of allegations of violations of Sheriff's Office policy *(id. at ¶¶ 155-157)*;

7. Count IX:     alleging violation of right to privacy – false light *(id. at ¶¶ 162-166)*;

8. Count X:      under § 1983, alleging conspiracy *(id. at ¶¶ 167-170)*;

9.  Count XII:    under § 1983, alleging wrongful death of David caused by failing to investigate complaints and failing to instruct, supervise, control, and discipline officers including David (id. at ¶¶ 177-184); and

10. Count XIII:   under § 1983, alleging violation of civil rights by engaging in unwarranted state interference with their familial relationship in violation of Fourteenth Amendment (id. at ¶¶ 185-190).

The precise bases for each of the Briese Plaintiffs' claims against the County Defendants are unclear.  It appears, however, that the claims stem from the Briese Plaintiffs' allegations that: (1)  David used marijuana and steroids; (2) although Erene complained to the County Defendants about David's use of marijuana and steroids, they neither properly investigated nor took appropriate action respecting such use; (3) David's use of steroids and the County Defendants' failure to take appropriate action regarding such use, such as by disciplining him, resulted in David's death; (4) David's death deprived the Briese Plaintiffs of their familial relationship with him; (5) after David's death, Erene sought the County Defendants' assistance in getting physical custody of her children; (6) the County Defendants' refusal or failure to assist her resulted in the Briese Plaintiffs being deprived of

10

their familial relationship with one another; and (7) the County

Defendants' actions or failures to act breached duties they owed to the

Briese Plaintiffs resulting in damages to them.

The County Defendants now seek summary judgment in their

favor on all counts against them.

## III.   <u>SUMMARY OF THE PARTIES' ARGUMENTS</u>

Respecting the Briese Plaintiffs' § 1983 claims, the County

Defendants argue that there is no evidence that they deprived the

Briese Plaintiffs of any constitutional right or that they acted with

deliberate indifference to the Briese Plaintiffs' right to familial

relations. *County Defts' Opening Br. (DKT 145) at 11.* The County

Defendants also argue that no evidence exists that their actions or

inactions caused David's death or that they prevented Erene from

obtaining her children after David's death. *Id. at 11-15.*

Specifically, the County Defendants argue that: (1) evidence of

record shows that Lt. Wilson and Detective Jensen conducted an

investigation into Erene's allegations against David; (2) they found no

evidence of marijuana use or illegal images on the family computer; (3)

they found that David used only DHEA, a legal steroid; (4) during the
investigation, David admitted using Androstendione, but stated that he
stopped using this steroid in December 2005 when he learned it was
banned; (5) evidence shows that the Sheriff's Office was not concerned
about David's use of DHEA since it was a legal substance; (6) the
Sheriff's Office determined that it could not intervene regarding
David's decision to use DHEA, because it is a legal substance, unless
there was a problem with his job performance associated with its use;
and (7) Erene was not living with David in 2006 and admitted that she
was not in a position to know whether he was using any substance or
whether he would have been having any problems related to use of
DHEA.  *Id. at 11-13.*  Because of these facts, the County Defendants
argue, it would not be reasonable to conclude that the County
Defendants were responsible for David's death and that they are thus
entitled to judgment as a matter of law.  *Id. at 15.*

The County Defendants also argue that the Briese Plaintiffs
cannot show that a constitutional deprivation occurred.  *Id. at 16.*  They
argue that no evidence exists that demonstrates that their action or

12

inaction prevented Erene from obtaining her children.  At the time of David's death, the County Defendants argue, a state court order was in place that permitted Erene only supervised visitation of JDB and JRB and that after David's death, DPHHS intervened to prevent Erene from obtaining the children.  They argue that Erene admits that there was no court authorization that would allow them or any other agency to obtain physical custody of the children for her after David's death or that they disregarded any such order.  Instead, the County Defendants argue, Erene had alleged and admits that DPHHS affirmatively prevented her from obtaining physical custody of her children.  Thus, the County Defendants argue, there is no evidence of any action or inaction by them that caused Erene or the children to suffer loss of a familial relationship or other constitutional deprivation.  *Id. at 17-19.* For these reasons, they argue, summary judgment is appropriate on the Briese Plaintiffs' § 1983 claims.  *Id. at 19.*

Respecting the Briese Plaintiffs' negligence claims, the County Defendants argue that they did not breach any duty of care.  They argue that no reasonable jury could conclude based on the evidence of

record that the County Defendants failed to use reasonable care in their investigation of David. *Id.* They argue that the Briese Plaintiffs' negligence claims fail because: (1) the Briese Plaintiffs have never named any individual County Defendants nor identified which County Defendants acted negligently; (2) there is no evidence that use of a legal, over-the-counter supplement led to David's accident in his patrol vehicle; (3) there is no evidence of record indicating interference with David's ability to perform the functions of his job; and (4) no evidence suggests that David was using any mind-altering or incapacitating substances at all or that any of the County Defendants knew or should have known that David would not perform his job functions safely. *Id. at 21.* Thus, the County Defendants argue, it was not foreseeable to them that David would drive too fast and fail to wear a seatbelt while responding to a request for assistance. *Id.*

Also, the County Defendants argue, the Briese Plaintiffs have failed to produce any evidence to show how disciplining David for using a legal steroid would have prevented the accident in his patrol vehicle. They also argue that the Briese Plaintiffs have failed to disclose any

experts who could testify about whether David's DHEA use could have contributed to his accident or that its use would have made an accident foreseeable and that their failure precludes them from making those claims.  They argue that for these same reasons, the Briese Plaintiffs' claims for intentional infliction of emotional distress and invasion of privacy – false light claims also fail.  *Id. at 21-23.*

In response, the Briese Plaintiffs argue that genuine issues of material fact exist that preclude summary judgment.  *Briese Pltfs' Resp. Br. (DKT 151) at 5-18.*  Respecting their § 1983 claims, the Briese Plaintiffs first point to transcripts of the investigators' interviews of David during the investigation of Erene's complaints against him.  The Briese Plaintiffs argue that David repeatedly lied about: (1) not taking any steroids since high school when he later revealed that he previously had taken Androstendione until he stopped in 2005 and was, at the time of the investigation, taking DHEA, *id. at 6-8*; and (2) taking "a whole bunch of supplements" but not taking any steroids when he was actually taking DHEA, *id. at 8*.  The Briese Plaintiffs argue that testing revealed that David actually had 12 times the normal level of DHEA in

his system at the time.  And, although DHEA was legally sold without a prescription, the Briese Plaintiffs note that Detective Jensen learned from an Internet search that it "was banned from use in many professional sports and the Olympics." *Id. at 9.*

The Briese Plaintiffs argue that in a follow-up interview with David, he admitted to the investigators that he was using DHEA and had previously used Androstendione.  He stated in the interview that he did not know DHEA was a steroid, and that he stopped using Androstendione after he learned that it was banned.  *Id. at 10-12.*  An August 8, 2006 supplemental report resulted from this follow-up interview and the Under Sheriff at the time met with David, informing him that the investigation was complete and that Erene's statements about him shooting up steroids and using marijuana were disproved. *Id. at 13.*  The Briese Plaintiffs argue that they "have not been provided with any documentation that shows the Yellowstone County Sheriff's Office followed up on the investigation of [David] [d]espite the fact that [David] had tested positive for the use of steroids and had lied about that fact[.]" *Id. at 13-14.*

16

The Briese Plaintiffs argue that the County Defendants: (1) did not discipline David for using either type of steroid; (2) have produced no evidence that they ever carefully monitored his duty performance after the investigation despite learning that he had 12 times the normal amount of DHEA in his system less than six months prior to his accident in his patrol vehicle; and (3) failed to act despite knowing that one of the side effects of DHEA was "aggression." *Id. at 14.* They argue that David's "behavior both by taking a banned substance, Androstendione, for almost a year after being banned, and then being deceptive about the use of such is in direct conflict with the Yellowstone County Sheriff's Office Law Enforcement Code of Ethics." *Id. at 15* (emphasis omitted). Again, the Briese Plaintiffs argue, there is no record of the County Defendants "taking disciplinary action or seeking mental health assistance for [David]." *Id.*

Finally, the Briese Plaintiffs argue that genuine issues of material fact exist respecting whether the County Defendants were made aware of any problems with David's job performance related to the use of DHEA or marijuana. They argue that Erene's report that

David had sexually assaulted her, while made to the Billings Police Department, was made known to the County Defendants.  Although the investigation into the alleged sexual assault was not yet completed at the time David died, the Briese Plaintiffs argue, the County Defendants were nevertheless aware of the complaint and its existence creates a fact issue about whether the County Defendants should have taken action to discipline David or at least monitor his mental health.  *Id. at 16-18.*

Respecting their negligence claims, the Briese Plaintiffs argue that: (1) the County Defendants owed a duty to provide a safe work environment for its employees; (2) they breached that duty when they failed to conduct a proper investigation into alleged substance abuse by David, "which was in violation of the policies and procedures of the County[,]"; (3) even if they did not owe a duty, when the County Defendants voluntary undertook to perform an investigation they were required to exercise ordinary care in doing so; (4) the County Defendants were on notice that David admitted to using an illegal substance for a year after it was classified as a controlled substance,

putting the County Defendants on notice that further investigation was necessary; and (5) materials provided by the County Defendants to David noted the adverse side effects of steroid use, so their knowledge that David was using 12 times the normal amount of DHEA should have made them aware that side effects for David were likely. *Id. at 19-20.* For all of these reasons, the Briese Plaintiffs argue that the Court should deny the County Defendants' summary judgment motion. *Id. at 20.*

In reply, the County Defendants first argue that the Briese Plaintiffs failed to demonstrate any genuine issues of material fact because they failed to file a statement of genuine issues in compliance with the Local Rules. Thus, they argue that the Briese Plaintiffs failed to dispute the County Defendants' statement of uncontroverted facts. *County Defts' Reply Br. (DKT 152) at 1-2.*

Second, they argue that the Briese Plaintiffs "failed to respond to [the] County Defendants' motion as it relates to familial interference, false light and intentional infliction of emotional distress." Thus, they argue, the Court should deem their motion well-taken as it relates to

19

those claims.  *Id. at 2.*

Third, the County Defendants argue that the Briese Plaintiffs

failed to produce any evidence that: (1) the County Defendants acted

pursuant to a policy or custom that was deliberately indifferent to the

Briese Plaintiffs' rights, *id.*; (2) the County Defendants either caused

David's death or prevented Erene from obtaining her children after

David's death, *id.*; (3) David's recollection of his steroid use is in dispute

because the County Defendants do not dispute his inconsistent

recollection or how they responded to it, *id. at 2-3*; (4) supports their

claim that the County Defendants should have disciplined David and

that such discipline would have prevented his death, *id. at 3*; (5) the

failure to discipline David was pursuant to a custom, policy or practice

of deliberate indifference attributable to the County Defendants, *id.*; (6)

the County Defendants' actions caused a deprivation of the Briese

Plaintiffs' rights, *id.*; (7) that steroid use can lead to aggressive

behavior or that it relates to the ability to operate a motor vehicle, *id.*;

(8) David had illegal or banned substances in his system when he died,

*id.*; (9) there were any problems with David's job performance or any

20

complaints about his job performance, *id. at 4*; (10) the investigation into the alleged sexual assault of Erene by David was concluded at the time of his death or was sufficient to demonstrate that the County Defendants were deliberately indifferent to anyone's safety, *id. at 5-6*; (11) demonstrates a causal link between the County Defendants' actions and David's death, *id. at 6*; and (12) demonstrates any action was taken by the County Defendants pursuant to a County custom or policy, *id. at 6-7*.

Fourth, the County Defendants argue that the Briese Plaintiffs failed to designate any expert witnesses competent to testify with respect to David's DHEA use and workplace safety or about whether it could be a breach of a duty to fail to discipline a patrol officer for using DHEA. *Id. at 7*. Thus, they argue, the negligence claims are precluded. *Id*. Finally, the County Defendants argue that, even if expert testimony is not necessary, the Briese Plaintiffs' negligence claims also fail because: (1) they failed to identify individual defendants who allegedly acted negligently; (2) the record lacks any evidence of complaints about David's ability to perform the functions of his job; (3)

21

no evidence indicates that the County Defendants knew or should have known that David would fail to operate his vehicle in a safe manner; and (4) no evidence exists that David was using mind-altering or incapacitating substances. *Id. at 8*. Thus, they argue, summary judgment on the Briese Plaintiffs' negligence claims is appropriate.

## IV.   <u>SUMMARY JUDGMENT STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable fact-finder to return a verdict for the nonmoving party.   *Id.*

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to

23

establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. Again, the opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

*T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## V.   <u>DISCUSSION</u>

The Court concludes for the reasons discussed below that the Briese Plaintiffs' response to the County Defendants' summary judgment motion is both procedurally and substantively defective. First, the Briese Plaintiffs failed to file a statement of genuine issues as required by Local Rule 56.1(b), which provides:

> (b)   Any party opposing a motion for summary judgment must also file a Statement of Genuine Issues.  The Statement

25

must:

    (1)    set forth in serial form each fact on which the party relies to oppose the motion;

    (2)    cite a specific pleading, deposition, answer to interrogatory, admission or affidavit before the Court to support each fact; and

    (3)    be filed separately from the motion and brief.

L.R. 56.1(b)(1)-(3).

This rule serves important goals. The statement of genuine issues, with evidentiary citations, permits the moving party and the Court to efficiently and expeditiously discern whether the party opposing summary judgment has evidence demonstrating a material fact issue sufficient to allow a claim to proceed to trial. The statement, ideally, directs the movant and the Court to specific evidence in the record – that is, "a specific pleading, deposition, answer to interrogatory, admission or affidavit before the Court" that supports each material fact that the responding party claims is in dispute. Without the statement of genuine issues, the party seeking summary judgment and the Court are left to search the record for evidence that could demonstrate a genuine issue of material fact for trial. But it is

26

not this Court's task "to scour the record in search of a genuine issue of triable fact." *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 2011 WL 4852472, *1 (C.D. Cal. 2011) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Instead, "counsel have an obligation to lay out their support clearly." *Id*. (quoting *Carmen v. San Francisco Sch. Dist.*, 237 F.2d 1026, 1031 (9th Cir. 2001). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id*. (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) and citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) ("[The nonmoving party's] burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden – for example, by remaining silent – its opportunity is waived and its case wagered.")).

Rule 83, Fed. R. Civ. P., authorizes district courts to adopt local rules to govern proceedings before them. "Local rules have the 'force of law' and are binding upon the parties and upon the court . ..." *Prof. Programs Group v. Dept. of Commerce*, 29 F.3d 1349, 1353 (9th Cir.

1994) (citations omitted).  This Court's Local Rules attempt to promote orderly and efficient process to all parties who come before the Court.

This Court recently noted that "[t]he Central District of California, addressing a similar local rule [to L.R. 56.1(b)], concluded that when a party fails to file a statement of genuine issues, that party is deemed 'not to raise a triable issue of material fact as to the claims on which the moving party seeks summary judgment.' " *Peterson v. Time Ins. Co. et al.*, CV 11-81-M-DWM-JCL (Order filed May 16, 2012) (quoting *Deirmenjian v. Deutsche Bank, A.G.*, 2010 WL 3034060 at *7 (C.D. Cal. July 30, 2010) (citations and internal quotation marks omitted)); see also Fed. R. Civ. P. 56(e).

Here, the Briese Plaintiffs not only failed to file a statement of genuine issues, with evidentiary citations, but also failed otherwise to file or point to evidence before the Court demonstrating the existence of a genuine issue of material fact for trial.  This failure is fatal to those claims for which the County Defendants now seek summary judgment.

After considering the County Defendants' motion and the parties' arguments in the context of the above-discussed standards, the Court

recommends that the motion be granted.  The Briese Plaintiffs have failed to identify, with evidentiary support in the record, any triable issue of material fact on their claims against the County Defendants at issue here.  The Court is left to conclude that they cannot prove the essential elements of their claims and thus there is no "genuine need for trial" of those claims.  *Matsushita*, 475 U.S. at 587.

Also, as discussed in more detail below, even if the Court were to excuse the Briese Plaintiffs' failure to file a statement of genuine issues, the Court nevertheless concludes that it must recommend that summary judgment be granted in the County Defendants' favor.  The County Defendants' summary judgment motion is appropriately directed at the two categories of claims asserted – the Briese Plaintiffs' § 1983 claims and their state law claims.  The Court addresses each category in turn.

### A.    § 1983 Claims

Section 1983 provides:

> Every person who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, shall be liable to the party
injured in an action at law[.]

42 U.S.C. § 1983.

"Section 1983 does not create any substantive rights, but is
instead a vehicle by which plaintiffs can bring federal constitutional
and statutory challenges to actions by state and local officials."
*Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla
Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir.2004) (internal
quotation marks omitted)).  The statute's purpose "is to deter state
actors from using the badge of their authority to deprive individuals of
their federally guaranteed rights."  *Id*. (quoting *McDade v. West*, 223
F.3d 1135, 1139 (9th Cir. 2000)).

In the case at hand, as noted, only the County Defendants remain
and no claims against individuals are pending.  Thus, the Briese
Plaintiffs assert only so-called municipal or governmental entity
liability ("municipal liability").  For municipal liability to lie under §
1983, offending actions must be taken "pursuant to official municipal
policy."  *Monell v. Department of Social Servs.*, 436 U.S. 658, 691
(1978).  Such municipal liability also may lie for a policy of inaction if

30

the inaction amounts to a failure to protect constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  But municipal liability does not arise from respondeat superior or general liability theories. *Id*. at 385 (citation omitted).  Instead, to demonstrate municipal liability, the Briese Plaintiffs must show that (1) the County Defendants deprived them of a constitutional right; (2) the County Defendants had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference to the Briese Plaintiffs' constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) and quoting *Canton*, 489 U.S. at 389-91).

Deliberate indifference "occurs when the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Oviatt*, 954 F.2d at 1477-78 (citations and internal quotation marks omitted).  The failure to

31

adequately implement a policy also may form the basis of municipal liability if the failure itself constitutes a policy of deliberate indifference. *Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004).  Whether a municipality has pursued a policy of deliberate indifference generally is a jury question.  *Oviatt*, 954 F.2d at 1478 (citation omitted).  A policy is the "moving force" behind a constitutional violation if it caused the violation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*.  Rather, the policy must be the proximate cause of the section 1983 injury." *Van Ort*, 92 F.3d at 837 (citations omitted).

As noted, the Briese Plaintiffs' principal theory for recovery on their § 1983 claims is that David's use of steroids and the County Defendants' failure to take appropriate action regarding such use, such as by disciplining him, resulted in David's death.  His death, in turn, deprived the Briese Plaintiffs of their familial relationship with him. In addition, David's death led Erene to seek the County Defendants' assistance in obtaining physical custody of her children and the County

Defendants' failure to assist her deprived her of familial relationship with them.

The Court concludes that the Briese Plaintiffs' § 1983 claims fail. First, for the Briese Plaintiffs' claim that the County Defendants failed to implement or enforce a policy to discipline David for steroid use, the failure must amount to deliberate indifference.  As noted above, deliberate indifference "occurs when the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Oviatt*, 954 F.3d at 1477-78 (citations and internal quotation marks omitted).

Here, there is no evidence suggesting that there was an obvious need for the County Defendants to take different action to protect identifiable constitutional rights.  The record reflects that: (1) the County Defendants responded to Erene's complaint that David was viewing pornography, shooting up steroids, and smoking marijuana by conducting an investigation; (2) the investigators ruled out illegal

33

pornography and marijuana use; (3) the investigators determined that the only steroid David was then using was DHEA, a legal substance; and (4) the County Defendants cautioned David about potential adverse health effects from such use.

The Briese Plaintiffs have failed to introduce evidence that would preclude summary judgment respecting their claim that the County Defendants should have done more, such as by disciplining David, or that supports their allegation that the investigation was somehow inadequate.  Instead, they have merely referred the Court and the County Defendants to portions of interviews conducted during the investigation and to written reports summarizing the investigation. Even affording the Briese Plaintiffs, as the non-moving parties, every favorable inference flowing from these materials, the Court concludes that they still fail to raise a genuine issue of material fact suitable for resolution by a jury.  See *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986) (for municipal liability to exist, a policy of inaction or omission must be more than mere negligence).  The Briese Plaintiffs offer no facts that would tend to prove "deliberate indifference" by the County

Defendants.

Second, the Briese Plaintiffs have failed to introduce admissible evidence that any action or inaction by the County Defendants caused a constitutional violation.  Respecting their claim that the County Defendants caused David to drive his patrol vehicle recklessly, crash the vehicle, and sustain fatal injuries, thus depriving them of a familial relationship with him, the Briese Plaintiffs offer no evidentiary support.  They have failed to present any expert opinion that supports their theory that having DHEA in excessive amounts in his bloodstream contributed to or caused David to crash his vehicle or caused his death.  Similarly, they have offered no evidence supporting their claim that the County Defendants' failure to discipline David caused him to crash his vehicle.  As noted, for municipal liability to exist, a policy of inaction or omission must be more than mere negligence.  *Daniels*, 474 U.S. at 333-36.

Respecting the Briese Plaintiffs' claim that the County Defendants failed to assist Erene in gaining physical custody of her children at the time of David's death, the Briese Plaintiffs again offer

35

no evidentiary support.  It is clear from the record that, at the time of

David's death, there was in effect a state court "Order of Protection and

Interim Parenting Plan" that granted David "residential care of the

parties' minor children during the pendency of this action or until

further Order of this Court[,]" and gave Erene "supervised parenting

time[,]" but directed her to stay 1,500 feet away from the children's

school and daycare, and ordered her to "stay away from the former

family home of the parties[.]"  With this order in effect, the Briese

Plaintiffs have failed to introduce evidence showing what the County

Defendants should have or could have done, short of violating a state

court order, to assist Erene in gaining physical custody of her children.

The Briese Plaintiffs can succeed on the causation requirement of

their municipal liability claims only if a reasonable jury could conclude

that the County Defendants' inadequate investigation, failure to

discipline David, and failure to assist Erene in getting physical custody

of the children were the moving force behind, and proximate cause of,

the constitutional violation.  For the foregoing reasons, the Court

concludes that no reasonable jury could reach such a conclusion.  Thus,

summary judgment in the County Defendants' favor is appropriate with respect to the Briese Plaintiffs' § 1983 claims asserting municipal liability, which includes Counts I, II, XII, and XIII of their First Amended Complaint.

Respecting the Briese Plaintiffs' § 1983 claim alleging conspiracy, the Court also concludes that summary judgment in the County Defendants' favor is appropriate. To prove conspiracy under § 1983, a plaintiff must show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. See *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990). Even if a plaintiff can show a conspiracy, however, § 1983 liability will not lie unless there is an "underlying constitutional violation." *Lacey v. Maricopa County*, ___ F.3d ___, 2012 WL 3711591, at *28 (9th Cir., Aug. 29, 2012).

Here, as discussed above, the Briese Plaintiffs have failed to raise a genuine issue of material fact to preclude summary judgment on their other § 1983 claims asserting municipal liability. As such, they have failed to demonstrate a constitutional violation. Without a constitutional violation, they cannot advance an actionable § 1983

conspiracy claim.  Thus, the County Defendants' summary judgment motion should be granted to the extent it relates to the Briese Plaintiffs' § 1983 conspiracy claim found at Count X of their First Amended Complaint.

### B.   State Law Claims

The parties' briefs characterize the Briese Plaintiffs' remaining state law claims as "negligence" claims.  But, in addition to their negligence claims alleging breach of the duty to provide a safe place to work (Count III), negligent infliction of emotional distress (Count IV), and negligent investigation of claims of Sheriff's Office policy (Count VI), the Briese Plaintiffs also allege intentional infliction of emotional distress (Count V) and "violation of right to privacy – false light" (Count IX).  *DKT 51*.  The Court addresses the two types of claims below.

### 1.   Negligence Claims

The Briese Plaintiffs' negligence claims stem from their allegations that: (1) the County Defendants failed to discipline David for his steroid use and that the failure ultimately resulted in David's fatal vehicle crash; (2) the County Defendants failed to adequately

investigate Erene's complaint to them about David's alleged use of

marijuana and steroids; and (3) the County Defendants' actions or

inactions resulted in negligent infliction of emotional distress upon the

Briese Plaintiffs.  For the reasons that follow, the Court concludes that

summary judgment in the County Defendants' favor is appropriate on

these claims.

The Montana Supreme Court has described negligence and its

elements in the context of a summary judgment motion as follows:

> Negligence is the failure to use the degree of care that an
> ordinarily prudent person would have used under the same
> circumstances.  To maintain an action in negligence, the
> plaintiff must prove four essential elements: (1) the
> defendant owed the plaintiff a legal duty, (2) the defendant
> breached that duty, (3) the breach was the actual and
> proximate cause of an injury to the plaintiff, and (4)
> damages resulted.  As noted, actionable negligence arises
> only from the breach of a legal duty.  Therefore, in order for
> there to be a genuine issue of material fact in a negligence
> case, there must be a duty imposed on the defendant and
> allegations which, if proven, would support a finding of a
> breach of the duty.  Furthermore, although negligence
> actions ordinarily involve factual issues which make
> summary judgment inappropriate, if the plaintiff fails to
> offer proof on any one of the four elements of negligence,
> then summary judgment in favor of the defendant is proper.

*Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008) (citations

omitted).  Determination of the existence of a duty is an issue of law.

*Gonzales v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009) (citing

*Lopez v. Great Falls Pre-Release Services*, 986 P.2d 1081, ¶ 31 (Mont.

1999)).

     "To determine if a defendant breached a duty of care, a plaintiff

must establish the standard of care by which to measure the

defendant's actions; in other words, she must establish the degree of

prudence, attention, and caution the defendant must exercise in

fulfilling that duty of care."  *Dubiel v. Montana Dept. of Transportation*,

272 P.3d 66, 69 (Mont. 2012) (citing *Dalton v. Kalispell Reg'l Hosp.*, 846

P.3d 960, 962 (Mont. 1993)).  In further explaining the standard of care,

the supreme court stated recently:

> It is well-established that expert testimony is required to
> support a negligence claim "when the issue presented is
> sufficiently beyond the common experience of the trier of
> fact and the expert testimony will assist the trier of fact in
> determining the issue or understanding the evidence."

*Albert v. City of Billings*, 282 P.3d 704, 708 (Mont. 2012) (quoting

*Dayberry v. City of East Helena*, 80 P.3d 1218 at ¶ 17 (Mont. 2003)).

     Here, as noted, the County Defendants argue that the Briese

Plaintiffs cannot establish what duty was owed them because expert testimony is essential to establish the standard of care and the Briese Plaintiffs have neither provided such testimony nor identified an expert qualified to render such an opinion.  The Court agrees.

In considering the Briese Plaintiffs' claims alleging negligence, myriad factors inform the standard by which the County Defendants' actions and inactions are to be measured.  Many of these factors are not readily apparent to a layperson.

For example, the Briese Plaintiffs base their allegations supporting these claims on David's use of Androstendione until December 2005 and DHEA at the time of the investigation of Erene's complaints against him.  They argue that use of such substances is known to cause aggression.  And they apparently theorize that David experienced aggression as a result of his use of the steroids, that the aggression led him to drive at too high a rate of speed while responding to a request for assistance from another deputy, and that his excessive rate of speed contributed to his ultimate crash and death.

But the Briese Plaintiffs have offered no competent or admissible

evidence supporting any of these allegations – most notably that use of steroids causes aggression, that their use caused aggression in David, or that aggression led David to drive at an unsafe speed.  Instead, they attached to their response brief only unauthenticated, hearsay, and therefore inadmissible, documents discussing Androstenedione.  See *Resp. Br. (DKT 151) at Ex. H (DKT 151-8) at 1-18.*  A district court's ruling on a summary judgment motion may only be based on admissible evidence.  See *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 385 (9th Cir. 2010).  Nor do the Briese Plaintiffs offer any expert opinions as to the duties of a law enforcement agency faced with this situation.

Also, while the Briese Plaintiffs argue that David had 12 times the normal level of DHEA in his system when tested during the investigation, they have offered no competent evidence linking that fact with any of their other allegations.  Thus, they have failed to demonstrate with competent evidence the standard of care by which to measure the County Defendants' actions or inactions respecting work place safety or their investigation and decisions concerning David's use

42

of DHEA.  The Briese Plaintiffs are not permitted at this juncture to merely speculate respecting their claims, and they have offered no expert testimony to support them.  Thus, they have failed to demonstrate a genuine issue of material fact that would preclude summary judgment.

Also, even if it could somehow be determined that the Briese Plaintiffs have adequately demonstrated that the County Defendants owed a duty respecting the subject claims, the claims nevertheless fail. For the same reasons already discussed, the medical effects of steroid use at the time David used them and whether such use caused David to be aggressive and to drive at unsafe speeds at the time he crashed his patrol vehicle are sufficiently beyond the common experience of the trier of fact.  Similarly, whether a different type of investigation or whether some form of discipline of David would have led to a different outcome are not questions with answers within the common experience of lay persons.  Expert testimony is required to establish causation under the circumstances.  See *Hinkle v. Shepherd Sch. Dist. # 37*, 93 P.3d 1239, 1246 (Mont. 2004) (affirming summary judgment where

plaintiff failed to introduce expert testimony establishing causal connection between defendants' actions and plaintiff's medical conditions).  The Briese Plaintiffs' negligence claims are subject to summary judgment on this basis as well.

### 2.   Emotional Distress and Privacy Claims

The County Defendants seek summary judgment on the Briese Plaintiffs' claims alleging emotional distress and invasion of right to privacy for the same reasons asserted above respecting the negligence claims.  The Briese Plaintiffs failed to respond to the County Defendants' motion to the extent it was directed at these claims.  For this reason alone, under the foregoing authority discussing the standard for summary judgment, it is appropriate to grant the County Defendants' motion.

Another basis for granting the County Defendants' motion for summary judgment as to the Briese Plaintiffs' "invasion of privacy – false light" claim is that the Briese Plaintiffs have presented no evidence supporting this claim.  The County Defendants' motion respecting this claim, therefore, should be granted.

Finally, respecting the Briese Plaintiffs' emotional distress claims, there are two additional reasons they are subject to summary judgment. First, the Briese Plaintiffs have presented no evidence supporting these claims.

Second, in Montana, "[a]n independent cause of action for the tort of infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission." *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 418 (Mont. 1995). "It is for the court to determine whether on the evidence severe [serious] emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.*, 896 P.2d at 425 (quoting Restatement (Second) of Torts, § 46, comment j at 78).

As noted above, the Briese Plaintiffs' other claims against the County Defendants do not survive summary judgment. Thus, it appears that the bases upon which the Briese Plaintiffs' emotional distress claims rest no longer exist because there are no negligent or

intentional acts or omissions from which their emotional distress could flow.  Thus, summary judgment with respect to the Briese Plaintiffs' emotional distress claims is appropriate.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that the County Defendants' Motion for Summary Judgment (*DKT 143*) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 16th day of October, 2012.


<u>/S/ Carolyn S. Ostby</u>
United States Magistrate Judge